SMITH, RESPONDENT, *v.* KLEINSCHMIDT, APPELLANT.

(No. 4,092.)

(Submitted January 14, 1920.   Decided February 9, 1920.)

[187 Pac. 894.]

*Slander—Defenses—Truth of Statement — Insurance—"Rebating"—Misdemeanor.*

Insurance—"Rebating" a Misdemeanor.
   1.   A fire insurance solicitor who, pursuant to an agreement with an agent of the owner of a business block, paid over to the agent two-thirds of the commission earned by him in writing the insurance upon such block, was guilty of "rebating," an act made a misdemeanor by section 4028, Revised Codes.

Slander—Truth of Statement a Defense.
   2.   The truth of the statement by defendant that plaintiff, while acting as a fire insurance agent, was guilty of rebating, having been established, it constituted a defense to an action for slander, and the court erred in refusing to direct a verdict in favor of defendant.

   [On the question of applicability of statute against rebates and discrimination to allowance by agent to insured of part of former's commissions, see note in 23 L. R. A. (n. s.) 722.]

   [On truth as a defense to action for libel or slander, see notes in 21 L. R. A. 502; 31 L. R. A. (n. s.) 132; 50 L. R. A. (n. s.) 1040.]

*Appeal from District Court, Lewis & Clark County; R. Lee Word, Judge.*

ACTION by A. G. Smith against Reinhold H. Kleinschmidt. Judgment for plaintiff and defendant appeals. Reversed and remanded.

*Mr. Edward Horsky,* for Appellant, submitted a brief; *Mr. Geo. F. Shelton,* of Counsel, argued the cause orally.

On the proposition that the transaction narrated by the plaintiff, both in his testimony in this case and in his original complaint, constitutes rebating, the following cases are cited: *Equitable Life Assur. Soc.* v. *Commonwealth,* 121 Ky. 543, 89 S. W. 537; *Citizens' Life Ins. Co.* v. *Commissioner of Insurance,* 128 Mich. 85, 87 N. W. 126; *Metropolitan Life Ins. Co.* v. *People,* 209 Ill. 42, 70 N. E. 643; *McNaughton* v. *Des Moines Life Ins. Co.,* 140 Wis. 214, 122 N. W. 764; *State* v. *Hibernia Ins. Co.,* 38 La. Ann. 465, 467; *Interstate Life Assur. Co.* v. *Dalton,* 165 Fed. 176, 178, 23 L. R. A. (n. s.) 722, 91 C. C. A. 210; *People* v. *American Life Ins. Co.,* 267 Ill. 504, 108 N. E. 679.

There is no such crime as "rebating" *eo nomine,* either at common law or under the Montana statutes. Where there is no crime *eo nomine,* necessarily no slander *per se* can be charged in an attempt to characterize that as crime, which is not *eo nomine* a crime. Plaintiff failed to allege that the hearer understood the "illegal" act of "rebating" to refer to any criminal offense. An act may be illegal and yet not criminal. Where the words declared are capable of conveying the defamatory meaning claimed for them, and also equally capable of conveying some other and innocent meaning, there must be an averment and innuendo showing not only that the words were intended by defendant in a defamatory sense, but that the hearers understood the language as conveying the alleged defamatory meaning. (*Smith* v. *Gaffard,* 33 Ala. 168; *Maynard* v. *Firemen's Fund Ins. Co.,* 34 Cal. 48, 91 Am. Dec. 672; *Hamilton* v. *Lowery,* 33 Ind. App. 184, 71 N. E. 54; *Cosand* v. *Lee,* 11 Ind. App. 511, 38 N. E. 1099; *Wilson* v. *Beighler,* 4 Iowa, 427; *Woolnoth* v. *Meadows,* 5 East, 463, 102 Eng. Reprint, 1148, 2 Smith K. B. 28, 7 Rev. Rep. 742; 25 Cyc. 452.)

In slander actions, the substance of the precise words alleged or so many of the words as charge the particular act alleged must be proved, and it is not enough to prove other words which would give an impression similar to that of the words alleged, or justify an inference of a charge of the particular act or offense. (*Fleet* v. *Tichenor*, 156 Cal. 343, 34 L. R. A. (n. s.) 323, 104 Pac. 458; *Boyce* v. *Wheeler*, 161 Mo. App. 504, 144 S. W. 119; *Bleitz* v. *Carton*, 49 Wash. 545, 95 Pac. 1099; *Eisfelder* v. *Klein*, 5 Ky. Law Rep. 138; *Wooten* v. *Martin*, 140 Ky. 781, Ann. Cas. 1912B, 407, 131 S. W. 783.)

The truth is a complete defense. Section 10, Article III, of the state Constitution, in speaking of the freedom of speech, contains this language: "That in all suits and prosecutions for libel, the truth thereof may be given in evidence." The Constitution does not go further, or make any other reference to the effect of the truth, except to say that it may be given in evidence. What is necessary to constitute slander is left wholly to the legislature, which in the provisions of section 3602 has given the definition, and by that definition we are bound. The legislature has gone further, and in the provisions found in section 6578, has stated that the truth may not only be in evidence, but that it is a justification. In this particular case, the facts seem to resolve themselves into this statement: The defendant alleged that plaintiff had been guilty of rebating, and the plaintiff admits that he did the rebating. Hence, the defendant is accused of having told the truth respecting the plaintiff. (*Castle* v. *Houston*, 19 Kan. 417, 27 Am. Rep. 127; *Ellis* v. *Buzzell*, 60 Me. 209, 11 Am. Rep. 204; *Foss* v. *Hildreth*, 10 Allen (Mass.), 76; *George* v. *Jennings*, 4 Hun (N. Y.), 66; *Sullings* v. *Shakespeare*, 46 Mich. 408, 41 Am. Rep. 166, 9 N. W. 451; *Candrian* v. *Miller*, 98 Wis. 164, 168, 73 N. W. 1004; *Brown* v. *Independent Pub. Co.*, 48 Mont. 374, 138 Pac. 258.)

The very definition of slander is that the language charged as defamatory must be "false and unprivileged." Hence, if the language is either true, or if it is privileged, it does not answer the statutory definition of what constitutes slander.

It is not believed that a single decision of any court of last resort in modern times can be found which in any manner changes this general rule. The only cases that hold to the contrary are under statutes or constitutional provisions which, after stating that the truth may be given in evidence, contain the further qualifying statement: "When published with good motives and for justifiable ends shall be a defense." This was the case in *Jones etc. Co.* v. *Townsend's Admx.*, 21 Fla. 431, 436, 58 Am. Rep. 676, 677. This court has set the matter at rest in *Cooper* v. *Romney,* 49 Mont. 119, Ann. Cas. 1916A, 596, 141 Pac. 289, where it said: "No publication which is not false is a libel, and no publication which is privileged is a libel." The matter charged as libelous and slanderous is admitted to be true; hence, neither malice nor special damages can attach. (*Reynolds* v. *Publishers (George Knapp & Co.)*, 155 Mo. App. 612, 135 S. W. 103; *Beecher* v. *Press Pub. Co.*, 60 App. Div. 536, 69 N. Y. Supp. 895; *Waters-Pierce Oil Co.* v. *Bridwell,* 107 Ark. 310, 155 S. W. 126; s. c., 103 Ark. 345, Ann. Cas. 1914B, 837, 147 S. W. 64; *Morah* v. *Steele,* 157 App. Div. 109, 141 N. Y. Supp. 868; 25 Cyc. 413.)

*Messrs. Walsh, Nolan & Scallon,* for Respondent, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

It is contended that the words as uttered are not slanderous. The words have to do with an insurance agent, and the allegation is made concerning him that he is guilty of the crime of rebating. This is the charge in the complaint. The words spoken are that he had laid himself liable for rebating on the policy. That the word "rebating" has a settled and fixed meaning which carries with it the imputation of criminal wrongdoing is not open to doubt. To say of an insurance agent that he is guilty of rebating or that he laid himself liable for rebating on the policy is to say of him that he has done something in the insurance world which the law prohibits and brands as a crime. We make this assertion because the laws of many states so declare, and we contend that to say of an insurance agent that he

is guilty of rebating or that he has laid himself liable for rebating is, in effect, saying that he has committed a crime under the laws of the state of Montana. The law such as we are here considering has been before the courts in the following cases: *Julian Insurance Commissioner* v. *Guarantee Life Ins. Co.,* 159 Ala. 533, 49 South. 234; *Laun* v. *Pacific Mutual Life Ins. Co.,* 131 Wis. 555, 9 L. R. A. (n. s.) 1204, 111 N. W. 660; *McNaughton* v. *Des Moines Life Ins. Co.,* 140 Wis. 214, 122 N. W. 764; *Thomson* v. *McLaughlin,* 13 Ga. App. 334, 79 S. E. 182; *Phillips & Co.* v. *Fishback,* 84 Wash. 124, 146 Pac. 181; *Security Life Ins. Co.* v. *Allen* (Tex. Civ.), 170 S. W. 131; *People* v. *American Life Ins. Co.,* 267 Ill. 504, 108 N. E. 679; *Equitable Life Assur. Society* v. *Commonwealth,* 121 Ky. 543, 89 S. W. 537; *Citizens' Life Ins. Co.* v. *Commissioner,* 128 Mich. 85, 87 N. W. 126; *Metropolitan Life Ins. Co.* v. *People,* 209 Ill. 42, 70 N. E. 643.

The statement was slanderous *per se.* We find that there is much diversity of opinion whether the same rule applies in the case of libel and slander as to statements being slanderous *per se.* It will be found upon investigation that much of this doubt has crept into the decisions by reason of the difference in the statutory definitions of libel and slander. Whatever the rule may be at common law, there certainly is no room for doubt on this score when we consider our statute in defining slander. Under our statute, charging one with the commission of a crime constitutes slander, and so, likewise, are statements falsely stating something which tends directly to injure one in respect to his office, or in reference to his trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to the office, trade or business that has a natural tendency to lessen its profit. We submit that charging that Smith had been guilty of rebating, charged him with the commission of a misdemeanor; and the charge being unprivileged and false, actionable slander was charged. (*Kelly* v. *Independent Pub. Co.,* 45 Mont. 127, Ann. Cas. 1913D, 1063, 38

L. R. A. (n. s.) 1160, 122 Pac. 735; *State* v. *Sheridan,* 14 Idaho,
222, 15 L. R. A. (n. s.) 497, 93 Pac. 656.)

MR. JUSTICE HURLY delivered the opinion of the court.

Plaintiff, in two counts, charges defendant with slander. In
the first count it is alleged generally that the defendant said to
one William Stuewe "that the plaintiff had been guilty of the
crime of rebating, in that he (Smith), as an insurance agent,
had given a rebate of two-thirds of the premium payable on a
policy of insurance on the Granite Block in the city of Helena,"
the complaint further alleging that rebating is expressly de-
clared to be a crime under the provisions of Chapter 15 of the
Session Laws of 1909, and that the defendant, intentionally and
maliciously intending to injure plaintiff, charged the plaintiff
with crime; that the words spoken were false and unprivileged;
and that in consequence of the speaking thereof plaintiff was
injured in his reputation, rendered liable to criminal prosecu-
tion, and that said words tended to disgrace him, *etc.*

In the second count it is alleged that the defendant used the
following language respecting the plaintiff: "Smith [meaning
the plaintiff] is guilty of rebating, an illegal act [meaning
thereby that plaintiff has been guilty of the crime of rebating]."
This count further contains charges of injury and reference to
the statute concerning rebating adverted to in the first count.

To this complaint the defendant filed an answer denying gen-
erally and specifically its allegations. The defendant further
sets out the language which he claims he did use with reference
to the matter set forth in the complaint; pleads that the same
was privileged, and that the alleged defamatory words were true.
There was reply.

From the testimony it appears that the Warranty Title Com-
pany, a corporation, was the owner of the Granite Block in the
[1] city of Helena, and that the defendant was its secretary
and treasurer and its agent in the handling of the same. The
plaintiff was the agent of a fire insurance company, and solicited
of the defendant the writing of insurance policies upon the

building, and the defendant, acting as such officer and agent, caused to be written by the plaintiff two policies of insurance in the sum of $36,000 each thereon in favor of the corporation owning the same; that the premium charged for the writing of each of said policies was $737.10, of which sums the plaintiff was entitled to receive twenty per cent as his commission.

It further appears that the defendant, as a condition for the giving permission to plaintiff to write the insurance policies in question and with the statement by defendant that unless such agreement could be made defendant would place the insurance with other agents, entered into an agreement with the plaintiff requiring him to pay over to defendant two-thirds of the commission so earned by the plaintiff. After the payment of the premium upon each of the policies in question, the plaintiff gave his check to the defendant in the sum of $98.20, being two-thirds of plaintiff's commission for writing each policy. The plaintiff, in explanation of the transaction, states that Mr. Kleinschmidt told him that he (Kleinschmidt) was the secretary of the Warranty Title Company; that he always had two-thirds of the commission upon policies written upon the building; and that the payment of this share of the commission would be a payment to him individually for placing the insurance.

It further appears in the testimony that, after the filing of plaintiff's complaint, knowledge of the contents thereof was brought to the attention of the state auditor, and that by reason of the same, at the expiration of Mr. Smith's existing license as an insurance agent, the state auditor refused to renew the same, and that the plaintiff up to the date of trial had been deprived of the right to engage in the insurance business in this state. This is concededly the effect of the testimony.

At the close of plaintiff's case, a motion for a nonsuit was made, which was denied, after which defendant introduced testimony when a motion for a directed verdict was made by defendant which was denied by the court. The case was submitted to a jury, which returned a verdict in favor of the plaintiff. From the judgment this appeal was taken.

In our view of the case we need only consider the motions referred to.

While the complaint refers to Chapter 15, Laws of 1909, an examination of the provisions of that Chapter discloses that the same applies only to life insurance companies, and the case was tried upon the theory that the question of rebating was governed by the provisions of section 4026, 4027 and 4028, Revised Codes of Montana 1907, which are as follows:

"4026. * * * No insurance company organized under the laws of this state, or doing business in this state, shall make or permit any discrimination or distinction in favor of individuals between insurance or property of the same class in the amount of premiums or rates charged for policies, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon, nor shall any such company or agent pay or allow, offer to pay or allow, as inducement to insurance, any rebate of premium payable on the policy or any special favor or advantages in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy contract of insurance.

"4027. * * * Every corporation or officer or agent thereof which shall violate any of the provisions of this Act shall be fined in any sum not exceeding five hundred dollars to be recovered by an action in the name of the state, and on collection to be paid into the county treasury for the benefit of the common school fund.

"4028. * * * Every officer or agent of any such corporation who shall violate any of the provisions of this Act shall be deemed guilty of a misdemeanor."

Respondent, conceding the facts above stated, contends that his conduct did not constitute "rebating" or discrimination in favor of the assured corporation, but amounted to nothing more than a payment to defendant of a commission for assisting him

in obtaining the privilege of writing the insurance, and that such payment was not prohibited by law. With this contention we are unable to agree. The defendant was not in any sense a partner, servant, or employee of the plaintiff in the transaction or otherwise. Plaintiff knew that defendant was an officer of the assured, its treasurer and secretary, and its managing agent. He knew, or should have known, that defendant was bound to use good faith towards his company in all his business dealings pertaining thereto. He is presumed to have known that the statute prohibited his writing a policy of insurance at a rate lower than specified in the policy itself. Yet, to avoid the provisions of the statute, in a desire to obtain business, he accepted the check of the assured corporation, signed by defendant as treasurer, in payment of the premium, and then as a part of the same transaction immediately deducted from the amounts so paid two-thirds of his commission, and repaid the same to the assured's secretary, treasurer and managing agent. Conceding that defendant's conduct was reprehensible and sordid, and that he personally profited by the transaction, we fail to see how this may avail the plaintiff. In our view it does not change the situation in the least that the parties agreed that the rebate was made to defendant personally. Whether it be that the assured corporation or defendant personally profited by plaintiff's dividing his commission, plaintiff did "pay or allow, as an inducement to insurance" a "rebate of premiums," which act was prohibited by law.

Upon the oral argument respondent contended in effect that the prohibition against discrimination applies only to deduction from the share of the premium which the insurance company retains for carrying the risk. The agent's commission is as much a part of the premium paid by the assured as is the portion retained by the insurance company.

In *Equitable Life Assur. Soc., etc., v. Commonwealth,* 121 Ky. 543, 89 S. W. 537, an agent of the insurance company wrote a policy of life insurance, rebating sixty per cent (apparently his commission upon the policy for that year) of the first year's pre-

mium to the assured. The Kentucky statute, passed upon while apparently applicable only to life insurance companies, is otherwise almost identical with our section 4026. The court, in discussing the facts, declared plainly and explicitly that such action by the agent constituted a criminal offense. (See, also, *United States Life Ins. Co., etc.,* v. *Commonwealth,* 28 Ky. Law Rep. 948, 90 S. W. 970; *Heffron* v. *Daly,* 133 Mich. 613, 95 N. W. 714; *State Life Ins. Co.* v. *Strong,* 127 Mich. 346, 86 N. W. 825; *Fourche River Lumber Co.* v. *Bryant Lbr. Co.,* 230 U. S. 316, 57 L. Ed. 1498, 33 Sup. Ct. Rep. 887 [see, also, Rose's U. S. Notes].)

The testimony therefore showing that plaintiff did rebate, [2] contrary to the provisions of the statute, it follows that defendant may not be amerced in damages for making the statement complained of.

The truth of the charge made by defendant having been established, the motion for nonsuit, made when plaintiff rested, should have been granted. Likewise, plaintiff's case not having been aided by the testimony adduced in defendant's behalf, the court erred in not granting the motion for a directed verdict made at the close of the testimony.

The judgment is reversed and the cause is remanded to the district court.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, MATTHEWS and COOPER concur.