# FOURCHE RIVER LUMBER COMPANY *v.* BRYANT LUMBER COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 296. Argued May 6, 1913.—Decided June 9, 1913.

Carriers, whether saw-mill companies or railroads or both combined, cannot purchase land by rebating to the grantor a part of the freight rate on interstate shipments over the road built on the right of way.

A rebate made for purchase of land is illegal even though much less than the value of the land acquired.

The prohibitions of the Act to Regulate Commerce against rebates cannot be evaded by calling them differentials or concessions, nor by taking the money from a corporation that is the same as the rebating carrier.

97 Arkansas, 623, reversed.

THE facts, which involve the right, under the Act to Regulate Commerce, of a carrier to pay rebates to a shipper in consideration of a right of way granted by the latter, are stated in the opinion.

*Mr. Luther M. Walter* and *Mr. W. E. Hemingway,* with whom *Mr. U. M. Rose, Mr. G. B. Rose, Mr. D. H. Cantrell, Mr. J. F. Loughborough* and *Mr. M. W. Borders* were on the brief, for plaintiff in error:

The contract of August 3, 1905, became invalid as to the rate for transportation of logs when tariffs were filed by the Fourche River Valley & Ind. Terr. R. R. Co. prescribing another and different rate from the contract price.

The award of the arbitrators and the judgment of the court awarding damages equal to the amount of the division of the joint rate received by the Fourche River Valley & Ind. Terr. R. R. Co. constitutes a device where-

by the Bryant Lumber Company is given transportation at less than the published interstate rates.

The Interstate Commerce Commission alone has jurisdiction in the first instance to require establishment of switch connection or award damages for failure to make such connection or damages for unjust discrimination. *Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *Tex. & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426; *United States* v. *Union Stock Yard & Transit Co.*, 226 U. S. 286; *Int. Com. Comm.* v. *D., L. & W.*, 216 U. S. 531; *Balt. & Ohio* v. *United States*, 215 U. S. 481.

*Mr. Charles C. Reid*, with whom *Mr. T. M. Mehaffy* was on the brief, for defendant in error:

No right or immunity under the Interstate Commerce Act having been pleaded or claimed by the plaintiff in error with sufficient particularity until the motion for rehearing was filed in the state Supreme Court, it was then too late to sustain writ of error. *Miller* v. *Texas*, 153 U. S. 535; *Texas & Pac. R. R. Co.* v. *So. Pac. Co.*, 137 U. S. 48; *Caldwell* v. *Texas*, 137 U. S. 692, 698; *Mutual Life Ins. Co.* v. *McGrew*, 188 U. S. 291; *Budzisz* v. *Ill. Steel Co.*, 170 U. S. 41

The writ will not be sustained because the judgment of the state court was based upon grounds entirely sufficient to sustain it independently of the Interstate Commerce Act, and did not regard the act as involved. *Ballinger* v. *Iowa*, 18 Wall. 129; *Detroit City R. R. Co.* v. *Suthard*, 114 U. S. 133; *Fisher* v. *Cockrill*, 5 Pet. 248; *Allen* v. *So. Pac. R. R.*, 173 U. S. 480.

The Fourche Lumber Company itself has no interest in nor is it concerned with the validity of the rates charged by the Fourche River Valley & Ind. Terr. R. R. Co. No right of plaintiff in error under the Interstate Commerce Act is denied or involved and it cannot set up such right

for another. *McNulta* v. *Lochridge,* 141 U. S. 327; *Brown* v. *Smart,* 145 U. S. 455; *Owings* v. *Norwood,* 5 Cranch, 344; *Hale* v. *Gaines,* 22 Howard, 144; *Iron Clifts Co.* v. *Negaunee,* 197 U. S. 463; *Long* v. *Converse,* 91 U. S. 105; *Pinney* v. *Sheppard et al.,* 177 U. S. 170.

That the Fourche Lumber Company received by reason of its affiliation with the Fourche River Valley & Indian Territory Railroad advantages in the way of rate concession which it enjoyed over the Bryant Company was a question of fact which was determined by the judgment of the lower court and which this court will not review. *Hendrix* v. *Atchison,* 167 U. S. 673; *Gardner* v. *Bonesteel,* 180 U. S. 362; *Christian* v. *Miller,* 197 U. S. 313; *Chapman Land Co.* v. *Bigelow,* 206 U. S. 41; *Thayer* v. *Spratt,* 189 U. S. 376.

MR. JUSTICE LAMAR delivered the opinion of the court.

The Bryant Lumber Co. had its mill and saw mill plant at or near Bigelow, Arkansas, on the Rock Island Railroad. The Fourche Lumber Co.'s plant was located near by on a spur track laid about a mile from the main line of the Rock Island R. R. Both of these lumber companies owned timber in a rough, hilly country which could only be reached by a railroad, belonging to the Bryant Co. The Fourche Lumber Co. had already built a road on this land, claiming that it had been granted a right-of-way by the Bryant Co., and had applied for a railroad charter. This application was resisted by the Bryant Co., which denied that it had made any grant of a right-of-way. Finally, and in order to avoid threatened litigation the parties, in August, 1905, entered into an agreement in which, among many other matters, it was provided that a charter should be granted to the Fourche River Valley & Indian Territory R. R., to be organized by the Fourche Company; that the Bryant Co. would grant this Fourche Railroad a right-of-way and that the Fourche Co. was to

arrange for the building of switches to enable the Bryant Co. to reach its timber, which was to be transported at 37½ cents per 100, and that "the price for hauling future acquired lumber of the Bryant Co. over the Fourche R. V. & I. T. R. R. should be fixed by a board of arbitrators, who should have authority to settle any differences that might arise between the parties as to the details of carrying out the contract," and "so that the Bryant Co. might be secured against any discrimination in favor of the Fourche Co. in the transaction of its business, and the Fourche Co. shall be required to carry timber and other freight equally without discrimination for or against the Bryant Co."

The Fourche Co. agreed that it would cause the contract to be ratified by the Fourche River Valley & Indian Territory R. R. Co. Thereafter the contract was carried out; the Fourche R. R. was incorporated; the Bryant Co. made to it a conveyance of the right of way as stipulated; the railroad was constructed and hauled freight in intrastate and interstate commerce.

There was evidence that all of the stock of the Railroad, except one or two qualifying shares, were held by the persons who owned the Fourche Lumber Co., but the two corporations kept separate books, and when the Railroad made dividends they were paid to its stockholders of record.

In August, 1907, differences arose between the parties and under the provisions of the contract the Bryant Co. demanded an arbitration of several matters in issue— among others submitting to the Board the following proposition:

"Fourth. That the Fourche River Lumber Company through the Fourche River Valley & Indian Territory Railroad Company shall secure to the Bryant Lumber Company from the Fourche River Valley & Indian Territory Railroad Company, the same freight concessions as

are now enjoyed by the Fourche River Lumber, Company, through its interest and the interest of its owners in the Fourche River Valley & Indian Territory Railroad Company."

The arbitrators found in favor of the Bryant Company and the terms of the award not having been complied with, the Bryant Company brought suit against the Fourche Lumber Company.

It appears that under the blanket rate, then of force, the same rate of freight was charged from any point in Arkansas to St. Louis, to Memphis or to Oklahoma points. Out of this through rate the Rock Island allowed 2, 3 and 3½ cents to the Fourche R. R. on all lumber originating on such road and shipped over the Rock Island to St. Louis, Memphis or Oklahoma. This division of through rate between the two roads on interstate shipments was noted on the tariffs filed with the Interstate Commerce Commission.

On the trial, the president of the Bryant Co. testified that it had shipped 13,251,759 pounds of lumber in interstate shipments, and on it the Bryant Co. claimed 2 cents per 100.

Being asked what was the basis of the claim he said: "They are getting it. Q. Who is getting it? A. The Fourche River Vy. & Indian River R. R., which are the same people as the Fourche River Lumber Co. Q. They are two separate and distinct corporations? A. Yes." In reference to the claim for failing to lay the tracks and switches as agreed he was asked: "Did the Fourche R. R. furnish you with a profile? A. I don't know that it was the Railroad Co., it was the lumber company I think. Q. Who did you get the profile from?—The Lumber Co. or the Railroad Co.? A. I don't know. To me they are all the same. Q. I understand that; it is to your advantage to have them all the same, but as a matter of fact from which institution did you get the profile? A. I could look

at the papers and see which one wrote the letter, but it is the same people all the time."

The defendant excepted to the refusal of the court to instruct the jury that "a payment to the plaintiff of the differentials provided in the award of the arbitrators would be the granting to the Bryant Co. of a rebate forbidden by law, enabling the Bryant Co. to transport its goods at less than the tariff rate and you will find for the defendant on that issue." Instead of giving the charge requested the court instructed the jury that "under the contract, and findings of the arbitrators, the Fourche Lumber Co. was required to pay the Bryant Co. the same differentials that the Fourche R. R. received on interstate shipments of the Fourche Lumber Co. If you find from the testimony that the Fourche R. R. has received certain differentials from the Rock Island on interstate shipments and that the Fourche Lumber Co. has not paid to the Bryant Lumber Co. the same differentials on lumber that the Bryant Co. has shipped to the same territory, then you are instructed that the defendant (Fourche Co.) is indebted to the Bryant Co. the amount of any such differentials which it has not paid."

A judgment on the verdict rendered in accordance with this charge having been affirmed, the Fourche Lumber Company brought the case here, insisting that the charge and verdict were in violation of the Interstate Commerce Act, and, in effect, amounted to the giving of a rebate to the Bryant Lumber Company. The latter replies that the suit is against the Fourche Lumber Co. and that there is no law preventing one company from paying the whole or any part of the freight due by another. That may be true but not where that other party is sued as being in effect a common carrier engaged in interstate commerce. The arbitration was demanded and the award made on the theory that, inasmuch as the contract provided that there should be no discrimination, the Bryant Company

was entitled to receive from the Fourche Lumber Company "the same freight concessions as are now enjoyed by the Fourche Lumber Company through its interest and the interest of its owners in the Fourche Railroad." This suit is based upon the assumption that the two companies are identical in fact, though different in name.

Thus treating it, the case is as though the Bryant Lumber Company had sued the Fourche Lumber Company, doing business as an interstate carrier, for so much of the through rate as had been paid to it on the division by the Rock Island for hauling the Bryant Company's shipments of lumber. To state the proposition is to manifest its illegality, and to show that thereby the Bryant Company would get a reduction on the through rate on all of its lumber originating on the Fourche line.

The Fourche Railroad was not only incorporated as a common carrier but is treated as such by the Interstate Commerce Commission, and, under the filed tariffs of the Rock Island road, receives a part of the through rate on all lumber originating upon the line and shipped in interstate commerce. The status of this road is discussed in *Tap Line Cases*, 23 I. C. C. 277, and its right to a division of the freight recognized notwithstanding the fact that the stockholders are the same as those who own the shares of the Fourche Lumber Company. But it receives this part of the through rate, not as a concession, but for services actually rendered by it as a common carrier in hauling freight for part of the distance between the point of origin and the point of destination. In any other view it would have been unlawful for the Rock Island to pay, and, if so, no agreement to divide such unlawful receipts would be enforced by the courts. On the other hand, if the Fourche Railroad was lawfully paid for such services in hauling the lumber it would be illegal, directly or through a subsidiary, to give to the shipper a part of such joint rate under any pretext whatever. Carriers, whether saw-mill

companies or railroads or both combined, cannot purchase land by rebating to the grantor a part of the freight rate on interstate shipments over the road built on the right of way, even though the amount of such rebate was much less than the value of the land thus acquired. Cf. *Louisville & Nashville Ry. Co.* v. *Mottley*, 219 U. S. 467; *United States* v. *Lehigh Valley Railroad*, 220 U. S. 257; *United States* v. *Union Stock Yards*, 226 U. S. 287, 308.

The Commerce Act prohibits the payment of rebates, and its command cannot be evaded by calling them differentials or concessions, nor by taking the money from the Railroad itself or from a company that is proved to be the same as the Railroad. Otherwise nothing would be easier than for lumber companies to charter a railroad, collect freight as a railroad, but pay it out as a lumber company to shippers.

The suit in the present case proceeds on the theory that the Fourche Lumber Company and the Fourche Railroad are the same and that therefore the division of the through rate allowed to the Railroad was in fact received and enjoyed by the Lumber Company. And yet, notwithstanding that fact, it is claimed that if the Fourche Lumber Company should, under the contract, pay a part of that freight to the Bryant Company it would do so as a saw-mill and not as a carrier. The law will not permit such a chameleon-like change. The Fourche Lumber Company and the Fourche Railroad are either the same or different. If they are the same it cannot refund a part of the rate to the Bryant Company. If they are different the Fourche Lumber Company was not bound by the terms of the contract to make the payment now demanded. The court below found that they were the same and not different, and it results that its judgment must be

*Reversed.*