### In re BUSH TERMINAL CO.

### In re BUSH TERMINAL BLDGS. CO.

### BUSH TERMINAL BLDGS. CO. v. CITY OF NEW YORK.

#### No. 130.

Circuit Court of Appeals, Second Circuit.
Jan. 3, 1938.

ruptcy Act, 11 U.S.C.A. § 207. The City of New York filed a claim for utility taxes imposed under Local Law No. 21, published as No. 22 of 1934, p. 151, as amended by Local Law No. 2 of 1935, p. 94, as well as for sales taxes imposed under Local Law No. 24, published as No. 25 of 1934, p. 164. The court below, reversing the master, allowed the claims.

We held Local Law No. 21 of 1934, as amended by Local Law No. 2 of 1935, constitutional in Southern Boulevard R. R. v. City of New York, 2 Cir., 86 F.2d 633, certiorari denied, 301 U.S. 703, 57 S.Ct. 932, 81 L.Ed. 1357.

This act taxes the gross receipts of utility companies, even where the sale producing the receipt is not made for profit. Section 1 (c). It defines "utility" to mean "any person subject to the supervision of either division of the department of public service, and every person whether or not such person is subject to such supervision who shall engage in the business of furnishing or selling * * * steam." Section 1(e). Gross operating income as defined in section 1(d) includes credits as well as cash, and appellant admits the receipt of credits in its sale of steam.

PER CURIAM.

Section 2 of Local Law No. 2 of 1935 is an excise tax equal to 3 per cent. of the gross operating income for the calendar year 1935 and is in addition to all other taxes and fees imposed by any other provision of law, and is to be paid at the time and in the manner provided: "But any utility subject to tax hereunder shall not be liable to any tax under local law number seventeen of the local laws of the city of New York for the year nineteen hundred thirty-four, with respect to its gross income or gross operating income as the case may be."

A sales tax is imposed under Local Law No. 24 of 1934 during the period commencing December 10, 1934, and ending on December 31, 1935, of 2 per cent. upon the amount of receipts from every sale in the City of New York, and it includes steam. Upon failure to collect the tax from the purchaser, the vendor is liable to the city.

The stock of the Bush Terminal Buildings Company, with whom it has common officers and directors, is owned by the Bush Terminal Company. It has a steam

Harold H. Levin, of New York City, for subsidiary debtor.

Paul Windels, Corp. Counsel, of New York City (Paxton Blair and Frank J. Derrick, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The debtors are in reorganization proceedings under section 77B of the Bank-

plant, built by the Bush Terminal Company on its land, and by which it produces the steam here in question. Appellee supplies the steam to the Bush Terminal Company at cost. The testimony is clear that the transaction is a sale and was treated by both companies in their books of account as such. The Bush Terminal Company resells some of the steam to its tenants. The steam is measured with meters when sold to the Bush Terminal Company.

The debtor and the appellant are separate entities, and there is no occasion to apply the rule which allows the corporate fiction to be disregarded. It should be preserved here. See In re Watertown Paper Co., 2 Cir., 169 F. 252, 256; Fraw Realty Co. v. Natanson, 261 N.Y. 396, 185 N.E. 679. The intercorporate relations of the two companies may have been arranged to gain certain advantages, but that will not avoid the tax in this case. See Douglas & Shanks, "Insulation from Liability through Subsidiary Corporations," 39 Yale Law Journal, 193. There is no legal obstacle against regarding the sale of this steam from a subsidiary to a parent company as a purchase and sale. Since the subsidiary sold or furnished steam to the parent company, the sale is taxable under Local Law No. 21 of 1934 as amended by Local Law No. 2 of 1935. The appellant and its parent company's plan of separate corporations for the conduct of their various activities presumptively is for some gain or advantage, and being separate entities, under the circumstances, appellant is not permitted to deny the right of the appellee to tax for the services rendered. See Fourche River Lumber Co. v. Bryant Lumber Co., 230 U.S. 316, 323, 33 S.Ct. 887, 57 L.Ed. 1498; Jackson v. Hooper, 76 N.J.Eq. 592, 75 A. 568, 27 L.R.A., N.S., 658. We also find there was no joint adventure in the production and sale of this steam.

The court denied the claim which the appellant sought to set off against the tax. The right to recover taxes which have been paid under protest is one which the state has a right to circumscribe narrowly without contravening the Constitution. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. There is no right of action and therefore no set-off. Furthermore, the special master allowed the set-off of taxes paid under protest after reorganization proceedings were begun against taxes due and unpaid before the institution of the proceedings. The Bankruptcy Act § 68a, U.S.Code, title 11, § 108 (a), 11 U.S.C.A. § 108(a), sanctions the set-off of mutual debts, but it is obvious that the debts which were proposed as a set-off were not mutual. A credit in the trustee arising out of the activities carried on after adjudication has no element of mutuality with a debt owing by the bankrupt to a person with whom the trustee has been doing business. McDaniel Natl. Bank v. Bridwell, 8 Cir., 74 F.2d 331.

Order affirmed.