**In re TEXOIL SERVICE CO., Inc.**

**No. 3687.**

United States District Court
E. D. Texas, Tyler Division.
June 17, 1954.

William M. Steger, U. S. Atty., for Eastern Dist. of Texas, Tyler, Tex., John L. Burke, Jr., Asst. U. S. Atty. for Eastern Dist. of Tex., Tyler, Tex., for petitioner.

Smith & Smith, Tyler, Tex., for trustee.

SHEEHY, District Judge.

The United States has filed a petition for review seeking to have set aside or modified an order entered by the Referee in this matter on December 17, 1953 reducing the claim of the Director of Internal Revenue.

The record in this case reflects that the bankrupt filed a petition of voluntary bankruptcy herein on December 16, 1949

and on that date an adjudication of bankruptcy order was entered. On January 18, 1950 Romer Bullington was appointed trustee.

On April 13, 1950 the Collector of Internal Revenue for the First District of Texas timely filed with the Referee a claim for taxes due the United States by the bankrupt in the aggregate sum of $6,945.13, together with interest and penalties. The claim was given number 86. This claim included withholding tax, employers' excise tax, social security FIC taxes and income taxes for the year 1948. The amount of income taxes claimed for the year 1948 was $1,669.28.

The trustee contested petitioner's claim and a hearing was had before the Referee on December 17, 1953. The Referee found from the evidence offered at that hearing the following facts: that neither the bankrupt nor the trustee filed an income tax return for the year 1949; that the bankrupt previously paid to the petitioner as its income taxes for the year 1947 the sum of $2,545.93; that since bankruptcy the trustee has paid to the United States as Internal Revenue tax the sum of $144.06, which sum had not been credited on petitioner's claim No. 86; that the bankrupt owed the claimant, State of Texas, unemployment compensation taxes in the amount of $3,-275.35; that the bankrupt suffered a net operating loss for the year 1949 in the amount of $530,694.58; and that if such operating loss were carried back for two years next preceding 1949, all profits for the years 1947 and 1948, and each of them, would be eliminated. Based on the findings, above enumerated, the Referee concluded that, since the 1949 operating loss of bankrupt would eliminate all of bankrupt's profits for the years 1947 and 1948, such net operating loss should be carried back to 1948 and 1947 and, therefore, the sum of $2,545.93 paid by the bankrupt as income tax for the year 1947 and the sum of $553.66 paid by the bankrupt as income tax for the year 1948 should each be set off against petitioner's claim. The Referee further concluded that interest and penalties should be eliminated from petitioner's claim which would reduce petitioner's claim for employer's excise tax to the sum of $363.93 and which would reduce the social security FIC tax to the sum of $1,061.37. The Referee also concluded that petitioner's claim should be credited with the sum of $144.06, the sum the trustee had previously paid on petitioner's claim for Internal Revenue taxes. Having so concluded, the Referee entered an order on December 17, 1953 reducing petitioner's claim No. 86 from $6,945.13 to $874.91. The Referee made no determination as to the amount of the liability of bankrupt for income taxes for the year 1948 in the absence of the bankrupt's right to have the 1949 operating loss carried back to 1948 and 1947.

The petitioner in his petition for review attacks the finding of the Referee as to the net operating loss for the year 1949, the finding of the Referee as to the payment by the bankrupt of the sum of $553.66 as income tax for the year 1948 and the finding of the Referee as to the payment of the trustee of the sum of $144.06 as Internal Revenue taxes. A transcript of the evidence offered at the hearing on petitioner's claim and the trustee's objections thereto, above referred to, has not been furnished. In the absence of a transcript of the evidence offered at said hearing it will be assumed that such findings are supported by the evidence and accordingly such findings of the Referee are affirmed and adopted.

Assuming that the bankrupt suffered the net operating loss for the year 1949, as found by the Referee, and that such operating loss if carried back to the years 1947 and 1948 would eliminate all profits for the years 1947 and 1948, as found by the Referee, the real question presented by the petition for review is whether the sum paid by the bankrupt as income taxes for the years 1947 and 1948 can be set off against the petitioner's claim for taxes or any part of said claim.

The authority for the carrying back of a net operating loss is found in Title

26 U.S.C.A. § 122. It is only because of this statutory authority that a taxpayer would have the right to assert a net operating loss for a given year as a carry-back for each of the two preceding taxable years.

Section 68, sub. (a) of the Bankruptcy Act, 11 U.S.C.A. § 108, sub. a provides: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid". It is noted that the quoted statute dealing with set-offs does not specifically name the United States. Prior to the 1938 Amendment to the Bankruptcy Act, § 64, sub. a of said act did not classify taxes as "debts" but merely directed the court to "order the trustee to pay all taxes legally due and owing by the bankrupt to the United States" and, as an incident, to decide any question "as to the amount or legality of any such tax." 44 Stat. 666. However, by the 1938 Amendments taxes were classified as "debts" within the meaning of Section 64, sub. a, 11 U.S.C.A. § 104, sub. a, and Section 57, sub. n, 11 U.S.C.A. § 93, sub. n, was broadened to include "all claims of the United States" and require them to be "proved and filed in the manner provided in this section". In 11 U.S.C.A. § 93, sub. a it is provided, in effect, that a proof of claim shall state among other matters that the claim is justly owing from the bankrupt to the creditor. The forms for proof of claim, prescribed by the Supreme Court pursuant to authority conferred by 11 U.S.C.A. § 53 require the creditor to declare that there are no set-offs or counterclaims to said debt.

Prior to the 1938 Amendment of the Bankruptcy Act there might have been a question as to the allowance of a set-off against a tax claim because prior to that amendment taxes were not classified as "debts". But in view of the amendments made in 1938, above mentioned, such a question is no longer presented.[1]

Before the estate of this bankrupt would be entitled to have the income taxes the bankrupt paid for the years 1947 and 1948 set off against petitioner's claim for taxes, it would have to be established that the net operating loss carry-back for the years 1948 and 1947, and each of them, was a debt that the petitioner owed the bankrupt or the estate of the bankrupt.

Authorization for the crediting of a taxpayer's account or making a refund to the taxpayer where there has been an overpayment by the taxpayer is provided for in Title 26 U.S.C.A. § 322 and the amendments thereto. Sub. (b) (1) of that statute provides in part "Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later". Sub. (b) (6) of said statute provides "If the claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period of limitation prescribed in paragraph (1), the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back, or the period prescribed in paragraph (3) in respect of such taxable year, whichever expires later". Sub. (g) of the same statute provides "If the allowance of a credit or refund of an overpayment of tax attributable to a net operating loss carry-back or to an unused excess profits credit carry-back is otherwise prevented by the operation of any law or rule of law other than section 3761, relating to compromises, such credit or refund may be allowed or made, if claim therefor is filed within the period provided in subsection (b) (6)."

1. U. S. v. Roth, 2 Cir., 164 F.2d 575.

■ As stated by the Court of Appeals for the Second Circuit in In re Clayton Magazines, Inc., 77 F.2d 852, 853 "The allowance of a set-off does not alter the underlying legal relations between the parties, for one against whom a set-off is claimed must still be under the legal obligation to pay the amount of the set-off to the claimant". In other words, the petitioner herein would be under no duty to set off the amounts paid by the bankrupt as its 1947 and 1948 income taxes unless petitioner was under the legal duty or obligation to either credit the bankrupt's tax account with the amounts paid as 1947 and 1948 income taxes or refund said amounts to the bankrupt or the bankrupt's estate.

We now pass to a consideration of the duties and obligations of the petitioner as to the claimed net operating loss carry-back, above referred to.

The provisions of the Internal Revenue Code relating to net operating loss carry-backs and the crediting or refunding of an overpayment of taxes caused by a net operating loss carry-back are matters of legislative grace. That being true, a taxpayer, in order to obtain a credit or a refund because of a net operating loss carry-back must bring himself clearly within the provisions of the statutes authorizing such credits and refunds.

■ It is clear from a study of Title 26 U.S.C.A. § 322, with particular emphasis on the portions of that statute, above quoted, that where the taxpayer claims a credit or refund because of a net operating loss carry-back he must not only file a claim therefor with the Commissioner of Internal Revenue but he must file such claim within the time prescribed by said statute. The filing of the claim and the filing of the claim within the time prescribed by the statute are conditions precedent to any duty or obligation on the part of the Government to either credit the taxpayer's tax account or to refund to the taxpayer the amount of excess taxes paid because of the net operating loss carry-back. In the absence of the filing of such a claim or the filing of such a claim within the time prescribed by the statute the Commissioner would be under no duty or obligation to either credit the taxpayer's tax account or refund to the taxpayer the amount of excess taxes paid because of a net operating loss carry-back.[2]

■ In the instant case it is undisputed that neither the bankrupt before the institution of these proceedings nor the trustee subsequent to the institution of these proceedings filed a claim with the Commissioner of Internal Revenue claiming a credit or refund because of the 1949 net operating loss found by the Referee. Unquestionably, the trustee, upon his appointment, had the right to file with the Commissioner a claim for refund arising out of the 1949 net operating loss.[3] Had he filed such a claim and such claim was rejected by the Commissioner the merits and extent of said claim could have been determined in this bankruptcy proceeding, and if in the bankruptcy proceeding it were determined that the claim was valid in all or in part, the claim to the extent that it was valid would constitute a debt owed by petitioner to the bankrupt and would constitute an off-set against any portion of the petitioner's claim that a debt of that nature constituted an off-set.[4] But since no such claim has been filed, the Commissioner is under no duty or obligation to refund to the bankrupt or the bankrupt's estate any sum whatsoever because of the 1949 net operating loss suffered by the bankrupt. In the absence of such a duty or obligation on the part of the Commissioner there is no debt owing the bankrupt or the bankrupt's estate by petitioner because of said 1949 net operating loss to off set any part of petitioner's claim for taxes herein.

Furthermore, it appears that the time within which the trustee could have filed a claim for refund because of the 1949 net operating loss has expired not only

.2. Milton Bradley Co. v. U. S., 1 Cir., 146 F.2d 541.

3. In re Clayton Magazines, supra.

4. U. S. v. Roth, supra.

under the provisions of Title 26, § 322, above quoted, but under the provisions of Title 11 U.S.C.A. § 29, sub. e as well.

In the In re Clayton Magazines case, supra, it was held that when refund of an overpayment of a tax is barred by failure to file a timely claim for refund, it is likewise barred as a set-off in bankruptcy. Such holding seems to be law. The trustee in his brief herein contends that this holding in the In re Clayton Magazines case was overruled by the same court in the Roth case, supra. The holding in the Roth case is not so construed. In the Roth case the claim for income tax overpayment that was allowed as the off-set against the Government's claim for taxes filed in the bankruptcy proceedings was filed by the bankrupt and was timely filed. In fact, in the Roth case the court pointed out in a footnote that the fact that in the Roth case the bankrupt had timely filed a claim for refund was the fact that distinguished the holding in the Roth case from the court's holding in the In re Clayton Magazines case, above mentioned.

For the reasons, above stated, it is concluded that the Referee erred in holding that the petitioner was required to allow as a set-off against its claim the sums the bankrupt paid as its 1947 and 1948 income taxes and in reducing petitioner's claim by those amounts.

In view of the conclusions hereinabove reached, it is unnecessary to determine the remainder of the questions presented in the petition for review.

An order will be entered herein reversing and setting aside the order entered by the Referee on December 17, 1953 reducing petitioner's claim No. 86 to $874.91 and directing the Referee to determine the amount of income tax the bankrupt owed for the tax year 1948 and when said determination is made to allow as a part of petitioner's claim No. 86, the amount of tax so owed for 1948 less the sum of $553.66 and to allow on petitioner's said claim No. 86 the following amounts, the aggregate of which amounts is to be credited with the sum of $144.06

heretofore paid as Internal Revenue taxes by the trustee: withholding tax the sum of $2,693.26; employer's excise tax (.3 of 1%) the sum of $363.93 and social security tax FIC the sum of $1,061.37.